UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

COREY MCGEE                                                                    Plaintiff

v.                                                           Civil Action No. 3:23-cv-437-RGJ

WELLS FARGO BANK N.A., ET AL.                                              Defendants

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendant Synchrony Financial moves to dismiss Plaintiff Corey McGee's Complaint. [DE 19]. In response, McGee moves to amend. [DE 20]. Defendant Wells Fargo Bank N.A. then filed a motion to dismiss [DE 26], and McGee responded. [DE 35]. These matters are ripe. For the reasons below, McGee's Motion for Leave to File Amended Complaint [DE 20] is **GRANTED**, Synchrony's Motion to Dismiss [DE 19] is **GRANTED**, and Wells Fargo's Motion to Dismiss [DE 26] is **GRANTED**.

**I.     BACKGROUND**

This action arises from McGee's claims against Wells Fargo, Synchrony, JP Morgan Chase Bank National Association, KeyBank National Association, Experian Information Solutions, and Equifax Information Services, LLC (collectively "Defendants") for violating the Federal Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.[1]  McGee is considered a "consumer,"

---

[1] The factual allegations in the Complaint [DE 1] are considered true for purposes of this motion. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

Synchrony, Wells Fargo, JP Morgan, and KeyBank are considered "furnishers of information," and Experian and Equifax are considered "consumer reporting agencies" ("CRA").[2]

In July of 2022, McGee "accessed his credit reports and discovered several inaccurate accounts," including inaccurate accounts with Synchrony and Wells Fargo. [DE 20-1 at 5]. "Immediately upon discover[ing] the tradelines, [McGee] directly disputed each tradeline in writing."[3] McGee alleges that "[u]pon receipt of [his] direct dispute," Synchrony and Wells Fargo's duty was triggered, and as furnishers, they were required to "advise the CRA's of Plaintiff's disputes and to request a notation of the disputes on the tradeline." [*Id*.]. McGee alleges that Synchrony and Wells Fargo negligently and willfully "fail[ed] to inform the CRAs of Plaintiff's disputes and fail[ed] to request a notation of the disputes on the tradelines," which violated the FCRA. [*Id*. at 7, 10].

In March 2023, McGee "accessed his Equifax credit report and discovered several accounts reporting inaccuracies." [*Id*. at 6]. McGee contends that he immediately disputed the accounts to Equifax in writing, but it is unclear if these disputes were investigated. [*Id*.]. McGee alleges these failures by the furnishers and the CRAs to investigate and remove the inaccurate tradelines "have damaged Plaintiff, in that Plaintiff has been denied credit and/or has been forced to pay a high rate of interest for credit." [*Id*.].

---

[2] The FCRA defines "consumer" to mean individual. 15 U.S.C. § 1681a(c). The FCRA defines a consumer reporting agency as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f). The FCRA does not define "furnisher," however, other courts have defined a furnisher as "any entity which transmits information concerning a particular debt owed by a particular customer to consumer reporting agencies." *Carney v. Experion Info. Sol., Inc.*, 57 F.Supp. 2d 496, 501 (W.D. Tenn. 1999).

[3] "A tradeline refers to a record of activity for any time of credit extended to a borrower and reported to a credit reporting agency." *Hart v. Simon's Agency, Inc.*, No. 519CV00342NAMML, 2022 WL 4619863, at *1 (N.D.N.Y. Sept. 30, 2022).

McGee filed suit against Wells Fargo and Synchrony, asserting that they violated the FCRA as furnishers, for negligently and willfully "fail[ing] to investigate Plaintiff's dispute," and continuing to falsely report to the CRAs regarding the tradelines. [*Id.* at 7, 10]. Synchrony and Wells Fargo now move to dismiss McGee's complaint under Fed. R. Civ. P. 12(b)(6), for failing to state a claim upon which relief can be granted because the FCRA does not create a duty for furnishers to investigate direct disputes. [DE 19-1 at 1, DE 26-1 at 1]. McGee only responded to Wells Fargo's motion, arguing that Wells Fargo's Motion to Dismiss should be denied because "Plaintiff's tendered Amended Complaint sufficiently alleges that Wells Fargo violated the [FCRA] in connection with its reporting of Plaintiff's Wells Fargo tradeline and its investigation of Plaintiff's dispute of the tradeline." [DE 35]. However, prior to Wells Fargo's Motion to Dismiss, but after Synchrony's, McGee filed a Motion to Amend. [DE 20].

## II.   STANDARD

"When there are pending before the court both a dispositive motion and a motion to amend the complaint, the court must first address the motion to amend the complaint." *Gallaher & Assocs., Inc. v. Emerald TC, LLC*, No. 3:08-CV-459, 2010 WL 670078, at *1 (E.D. Tenn. Feb. 19, 2010) (citing *Ellison v. Ford Motor Co.*, 847 F.2d 297, 300 (6th Cir. 1988)). If the court grants a motion to amend, "the original pleading no longer performs any function in the case." *Clark v. Johnston*, 413 F. App'x 804, 811 (6th Cir. 2011) (internal quotation marks and citation omitted). Thus, "when the court grants leave to amend the complaint, a motion to dismiss the original complaint will be denied as moot if the amended complaint adequately addresses the grounds for dismissal." *Stepp v. Alibaba.com, Inc.*, No. 3:16-CV-00389-CRS, 2016 WL 5844097, at *2 (W.D. Ky. Oct. 4, 2016).

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id.* "The grant or denial of leave to amend is within the discretion of the trial court, and review is for abuse of discretion." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995) (citing *Roth Steel Prod. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983)). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). In other words, an action may be dismissed under Fed. R. Civ. P. 12(b)(6) if the complaint fails to state a claim upon which relief can be granted.

### III. DISCUSSION

1. <u>McGee's Motion for Leave to File Amended Complaint [DE 20].</u>

Because McGee has moved to amend, the Court considers this motion before the motions to dismiss. *See Gallaher & Associates, Inc.*, 2010 WL 670078, at *1. McGee's Motion for Leave to File Amended Complaint is unopposed. Generally, courts have freely allowed amendment of pleadings barring substantial prejudice to the opposing party. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991). Since the motion is unopposed, it is not apparent the motion was brought in bad faith, futile, or would result in substantial prejudice to the opposing party. *See*

*Harper v. Reid*, No. 2:19-cv-2, 2019 U.S. Dist. LEXIS 243080, at *4 (E.D. Tenn. Sep. 3, 2019) (citing *Lawson v. Truck Drivers, etc.*, 698 F.2d 250, 256 (6th Cir. 1983)).

McGee seeks to amend the Complaint to "correct errors in the originally filed complaint." [DE 20]. After review, the only difference between the First Amended Complaint and the Second Amended Complaint is that paragraph 23 and the first demand, both found in the First Amended Complaint, are omitted from the Second Amended Complaint. Otherwise, the proposed Second Amended Complaint is identical to the First Amended Complaint. [*See* DE 1-1; DE 20]. These edits in the proposed Second Amended Complaint are not unduly prejudicial to Defendants or futile because they do not expand the scope of discovery or add new claims. *See Amerisure Mut. Ins. Co. v. Transatlantic Reinsurance Co.*, No. 2:18-cv-11966, 2020 U.S. Dist. LEXIS 258903, at *3 (E.D. Mich. Oct. 16, 2020) (citing *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001)).

"In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quotations omitted). Because there is no apparent reason to deny leave, and the Federal Rules of Civil Procedure requires that leave be "freely given," the Court will **GRANT** McGee's Motion for Leave to File Amended Complaint. [DE 20].

2. Synchrony's Motion to Dismiss [DE 19]; Wells Fargo's Motion to Dismiss [DE 26].

"Even though the filing of an amended complaint typically moots a motion to dismiss the prior complaint, if some of the defects raised in the original complaint remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleadings." *Hamer v. Griffs,* No. 4:22-CV-12106, 2023 WL 3589774, at *2 (E.D. Mich. Apr. 28, 2023) (quoting *Yates v. Applied Performance Techs.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002)). Because there are no

5

substantive changes in the factual allegations in McGee's First Amended Complaint and Second Amended Complaint, and Wells Fargo's and Synchrony's arguments for dismissal still apply to the Second Amended Complaint, the Court sees no reason under these circumstances to require Wells Fargo and Synchrony to file a new motion to dismiss *See Redus v. Revenue Cycle Serv. Ctr., LLC.,* No. 3:22-CV-01029, 2024 WL 406771, at *1 (M.D. Tenn. Feb. 2, 2024).

"[The] FCRA exists to prevent 'furnishers of information' from spreading inaccurate consumer-credit information." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007)). Likewise, 15 U.S.C. § 1681s-2 is "designed to prevent furnishers of information from spreading inaccurate consumer credit information." *Id.* If a CRA discovers that the "completeness of accuracy of a consumer's information is in dispute," and the CRA determines that the dispute is not "frivolous or irrelevant," the CRA "will then notify the original furnisher and provide it with all the relevant information regarding the dispute." *Id.* (quoting § 1681i(a)(1)-(3)).

There are "five statutory duties imposed on furnishers of consumer information" under §1681s-2(b). *Id.* The FCRA requires furnishers to conduct a reasonable investigation of the disputed information, review all the relevant information provided by the CRA, report the results of its investigation to the CRA, report incomplete or inaccurate information to the CRA after the investigation, and modify, delete, or permanently block inaccurate or incomplete information that cannot be verified after a reinvestigation. *Id.* at 616-18.

When a furnisher fails to satisfy one of the five duties identified, a consumer can bring a claim under § 1681s-2(b). *Id.* at 618 ("A consumer who demonstrates that a furnisher was negligent in breaching one of these duties . . . is entitled to damages."); *see also*, *e.g.*, *Twumasi-Ankrah v. Checkr, Inc.,* 954 F.3d 938, 943 (6th Cir. 2020) ("§ 1681s-2(b) allows a consumer to sue

6

a data furnisher if the furnisher provides "incomplete or inaccurate" information to a CRA and then refuses to "delete" or "modify" that information in response to a consumer complaint."); *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 517 (6th Cir. 2019) ("The FCRA creates a private right of action for consumers to enforce the requirement under § 1681s-2(b) that furnishers of information investigate upon receiving notice of a dispute."). However, there is no private right of action under § 1681s-2(a), which requires "furnishers of information to provide accurate information." *Boggio*, 696 F.3d at 615 (citing § 1681s-2(d)); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 783 n.4 (W.D. Ky. 2003). As a result, consumers have a private right of action under § 1681s-2(b) and not § 1681s-2(a). *See id*.

However, "Consumers must file a dispute with a consumer reporting agency to trigger the furnisher's duty to investigate under §1681s-2(b)." *Scott*, 936 F.3d at 517; *See also*, *e.g.*, *Merritt v. Experian*, 560 F.App'x 525, 528-29 (6th Cir. 2014) ("Furnishers' of information to consumer reporting agencies do have certain responsibilities to investigate [under the FCRA]—but only after receiving a request from a consumer reporting agency to respond to a dispute."); *Stafford*, 262 F. Supp. at 784 (W.D. Ky. 2003) ("This means that a furnisher of credit information, such as the Bank, has no responsibility to investigate a credit dispute until *after* it receives notice from a consumer reporting agency."). In other words, furnishers *only* have a duty to investigate under § 1681s-2(b) when the CRA informs the furnisher of the dispute, not the consumer.

### i. *McGee's Claims Against Synchrony*

McGee alleges that immediately after discovering an inaccurate account with Synchrony on his credit report, he directly disputed this inaccuracy with Synchrony, triggering Synchrony's duty to investigate McGee's dispute. [DE 20-1 at 5].

7

It is settled that as a furnisher Synchrony has a duty to investigate only after receiving a request from a CRA.  *See Merritt*, 560 F.App'x at 523-29.  Here, McGee does not assert in the Second Amended Complaint that Synchrony failed to investigate the dispute after receiving a request from a CRA; but rather, Synchrony failed to investigate McGee's direct dispute.  [DE 20-1].  However, a direct dispute does not trigger the duty for furnishers to investigate under § 1681s-2 (b).  *Merritt*, 560 F.App'x at 523-29.  As a result, McGee's direct dispute did not trigger Synchrony's duty to investigate under the FCRA.  *See id*.  Therefore, there is no claim under § 1681s-2 (b) upon which relief can be granted.

McGee also alleges that Synchrony's "initial and continuing false reporting" of the tradeline "violates Synchrony's duties as a furnisher" under the FCRA.  [DE 20-1 at 7].  However, consumers do not have a private right of action against furnishers for reporting inaccurate information to CRAs regarding consumer accounts.  *See Boggio*, 696 F.3d at 615 (citing § 1681s-2(d)).  Thus, even considering the allegations of the Second Amended Complaint true, McGee's Complaint "fail[s] to state a claim upon which relief can be granted" under his FCRA § 1681s-2 claims against Synchrony.  Fed. R. Civ. P. 12(b)(6).  As a result, Synchrony's Motion to Dismiss is **GRANTED**.

      ii.     *McGee's Claims Against Wells Fargo*

Like with Synchrony, McGee alleges that immediately upon discovery of an inaccurate Wells Fargo account found on his credit report, he directly disputed this inaccuracy with Wells Fargo, triggering Wells Fargo's duty to investigate McGee's dispute.  [DE 20-1 at 6].  Likewise, McGee asserts that that Wells Fargo is liable under the FCRA for negligently and willfully "fail[ing] to investigate Plaintiff's dispute" and "its initial and continuing false reporting" of the tradeline.  [*Id*. at 6-7, 9-10].

As a furnisher, Wells Fargo does not have a duty to investigate direct disputes. *See Merritt*, 560 F.App'x at 523-29. Wells Fargo's duty to investigate only triggers once receiving a request to do so from a CRA. *See id*. And here, McGee's complaint does not allege that Wells Fargo failed to investigate after receiving a request from a CRA. Instead, the complaint alleges that Wells Fargo failed to investigate McGee's direct dispute. [DE 20-1 at 6]. However, this does not trigger a duty under § 1681s-2(b). *Merritt*, 560 F.App'x at 523-29.

McGee also alleges that Wells Fargo is liable for its "initial and continuing false reporting." [*Id*. at 6-7, 9-10]. But as stated above, consumers do not have a private right of action against furnishers for reporting inaccurate information to CRAs regarding consumer accounts. *See Boggio*, 696 F.3d at 615 (citing § 1681s-2(d)). And therefore, McGee cannot bring this claim against Synchrony because McGee is a consumer. *See id*. Thus, even taking the allegations of the Second Amended Complaint as true, it "fail[s] to state a claim upon which relief can be granted" under the FCRA § 1681s-2 claims against Wells Fargo. Fed. R. Civ. P. 12(b)(6). As a result, Wells Fargo's Motion to Dismiss is **GRANTED**.

## IV.   CONCLUSION

Accordingly, the Court, having considered the parties' motions and related filings and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) McGee's Motion for Leave to File Amended Complaint [DE 20] is **GRANTED**;

(2) Synchrony's Motion to Dismiss [DE 19] is **GRANTED**;

(3) Wells Fargo's Motion to Dismiss [DE 26] is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

March 14, 2024